UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No. 2:23-mj-101-KFW |
| | ) |
| TYLER CAMPBELL | ) |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Daniel Donovan, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND OFFICER BACKGROUND

1. I am a Police Officer for the Scarborough Police Department currently assigned to the U.S. Drug Enforcement Administration ("DEA") as a Task Force Officer. I am a graduate of the 34th Basic Law Enforcement Training Program at the Maine Criminal Justice Academy. I have been a Scarborough Police Officer for approximately five-and-a-half years and a DEA Task Force Officer for approximately one-and-a-half years. I have received training regarding various aspects of drug-related investigations, including the interdiction and identification of different drugs. I also have taken part in multiple drug trafficking investigations involving fentanyl and methamphetamine. Over the course of these investigations, I have conducted surveillance, performed interviews, executed search warrants, and processed drug-related evidence. Through my training and experience, I have become familiar with the habits, methods, practices, and procedures commonly employed by individuals engaged in drug-related crimes.

2. I make this affidavit in support of a criminal complaint charging Tyler Campbell ("Campbell"), with one count of distribution of fentanyl and methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1). The facts in this affidavit come from my personal observations, my training and experience, and information obtained from others.

**EXHIBIT A**

## STATEMENT OF PROBABLE CAUSE

3. Law enforcement has been investigating ongoing drug trafficking activities occurring in and around different hotels in Cumberland County, Maine. Through my direct involvement in this investigation, I have developed probable cause to believe that Campbell has been staying in different hotels and distributing large quantities of controlled substances, including fentanyl and methamphetamine, to other persons in the District of Maine.

4. More specifically, because of my direct involvement in this investigation, I know that DEA worked with Cooperating Source ("CS")[1] to complete two separate controlled purchases from Campbell in February 2023.[2] Because of my direct involvement in this investigation, I also know that Campbell has been using the cellular telephone number 207-956-3199 to exchange drug-related communications with CS and other persons both known and unknown. The first of DEA's two controlled purchases from Campbell is described more fully herein.

5. On about February 8, 2023, DEA met with CS. While under the direction of DEA, CS placed a recorded telephone call to Campbell. During the recorded call, Campbell expressed

---

[1] CS has a history of drug use, specifically marijuana. CS's prior criminal history includes convictions for, among other offenses, robbery, deposit fraud, drug possession, and obstruction. CS also is the named defendant in a pending federal drug case, which charges CS with one count of drug distribution. CS initially agreed to cooperate with DEA with the hope of receiving judicial consideration for CS's pending federal drug case. No promises were made to CS. While CS was cooperating with DEA, CS provided information that law enforcement deemed credible, which resulted in the seizure of drugs. On about February 25, 2023, CS was arrested in Gorham, Maine and charged with failing to appear, violating release conditions, operating after suspension, aggravated drug trafficking, and drug furnishing. Following CS's arrest on these state charges on about February 25, 2023, DEA deactivated CS as a cooperating source.

[2] Because of my direct involvement in this investigation, I know that this complaint affidavit describes one of two controlled purchases that DEA made from Campbell in February 2023. Following the first controlled purchase on about February 14, 2023, DEA worked with CS to complete a second controlled purchase for 99.2 grams of confirmed fentanyl and 55.9 grams of confirmed methamphetamine from Campbell on about February 22, 2023.

his willingness to sell drugs to CS, but Campbell and CS did not make any specific arrangements at that time. While under the direction of DEA, CS also exchanged text messages with Campbell in which they discussed prices for future drug transactions involving methamphetamine and fentanyl. These text messages were photographed and retained by DEA.

     6.     On about February 12, 2023, while under the direction of DEA, CS sent a text message to Campbell to order "3 zips" of methamphetamine and "5 sticks" of fentanyl.[3] Campbell responded, "Ok my man..I got you[.]" On about February 13, 2023, while under the direction of DEA, CS exchanged additional text messages with Campbell. During this text conversation, Campbell confirmed his current prices for methamphetamine and fentanyl were as follows: "It's 600/oz and 250/stick[.]" These text messages were photographed and retained by DEA.

     7.     On about February 14, 2023, while in the presence of DEA, CS placed a recorded telephone call to Campbell. During the recorded call, plans initially were made for CS to meet Campbell at one hotel in Portland, Maine. Campbell stated he was going to come to the lobby because he was meeting with his source of supply around the same time. The meet location for the controlled purchase subsequently changed to another hotel in Portland, Maine.

     8.     Prior to the controlled purchase, CS's person was searched with negative results for contraband. DEA provided CS with audio transmitting and video recording devices and $3,000 in prerecorded buy money and drove CS in an official government vehicle to a neutral location near where the controlled purchase would occur. Also prior to the controlled purchase, DEA established surveillance in the surrounding area. At one point, DEA observed Campbell walking down the street using his cellular telephone before obtaining the fentanyl that he later sold to CS.

---

[3] Based on my training and experience, I know that "zip" is a slang term used by drug traffickers to refer to 1-ounce increment of drugs, such as methamphetamine, and that "stick" is a slang term used by drug traffickers to refer to 10-gram increment of fentanyl or heroin.

9. While under surveillance by DEA, CS met with Campbell, and CS and Campbell went inside a particular hotel room where Campbell transferred approximately 50 grams of suspected fentanyl and approximately 84 grams of suspected methamphetamine to CS in exchange for $3,000. All of the above-mentioned communications between CS and Campbell were captured and retained by DEA.

10. Following the controlled purchase, CS exited the hotel room and took the elevator to the lobby. DEA watched CS walk toward the neutral location and return to the official government vehicle. Once inside the official government vehicle, CS gave DEA the suspected fentanyl and methamphetamine that CS had received from Campbell. CS's person was again searched with negative results for contraband.

11. Subsequent testing by DEA's Northeast Laboratory confirmed that Campbell transferred 50.3 grams of fentanyl and 84.0 grams of methamphetamine to CS.

## CONCLUSION

12. I respectfully submit, based on the facts set forth above, that probable cause exists to charge Tyler Campbell by criminal complaint with the offense of distribution of fentanyl and methamphetamine, in violation of Title 21, United States Code, Section 841(a)(1), and I respectfully request that the accompanying criminal complaint be issued.

Daniel Donovan, Task Force Officer
U.S. Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Apr 27 2023

City and state: Portland, Maine

Judge's signature

Karen Frink Wolf, U.S. Magistrate Judge
*Printed name and title*